**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

ALLINA HEALTH SYSTEM d/b/a ABBOTT )
NORTHWESTERN HOSPITAL, )
800 East 28th Street )
Minneapolis, Minnesota 55407 )
)
ALLINA HEALTH SYSTEM d/b/a CAMBRIDGE )
MEDICAL CENTER, )
701 South Dellwood Street )
Cambridge, Minnesota 55008 )
)
ALLINA HEALTH SYSTEM d/b/a OWATONNA )        Case No._____
HOSPITAL, )
2250 NW 26th Street )
Owatonna, Minnesota 55060 )
)
ALLINA HEALTH SYSTEM d/b/a UNITED HOSPITAL, )
333 North Smith Avenue )
St. Paul, Minnesota 55102 )
)
ALLINA HEALTH SYSTEM d/b/a UNITY HOSPITAL, )
550 Osborne Road, NE )
Fridley, Minnesota 55432 )
)
FLORIDA HEALTH SCIENCES CENTER, INC. d/b/a )
TAMPA GENERAL HOSPITAL, )
1 Tampa General Circle )
Tampa, Florida 33601 )
)
HENRY FORD HEALTH SYSTEM d/b/a HENRY FORD )
HOSPITAL, )
2799 West Grand Boulevard )
Detroit, Michigan 48202 )
)
HENRY FORD HEALTH SYSTEM f/d/b/a HENRY )
FORD MACOMB HOSPITAL – WARREN CAMPUS, )
1 Ford Place, 5F )
Detroit, Michigan 48202 )
)
HIGHLAND HOSPITAL OF ROCHESTER, )
1000 South Avenue )
Rochester, New York 14620 )

KALEIDA HEALTH,                                     )
100 High Street                                     )
Buffalo, New York 14203                             )
                                                    )
KINGSBROOK JEWISH MEDICAL CENTER,                   )
585 Schenectady Avenue                              )
Brooklyn, New York 11203                            )
                                                    )
LONG ISLAND JEWISH MEDICAL CENTER,                  )
270-05 76th Avenue                                  )
New Hyde Park, New York 11040                        )
                                                    )
LONG ISLAND JEWISH MEDICAL CENTER d/b/a             )
FOREST HILLS HOSPITAL,                              )
102-01 66th Road                                    )
Forest Hills, New York 11375                        )
                                                    )
LONG ISLAND JEWISH MEDICAL CENTER d/b/a             )
FRANKLIN HOSPITAL                                   )
900 Franklin Avenue                                 )
Valley Stream, New York 11580                        )
                                                    )
MAIMONIDES MEDICAL CENTER,                          )
4802 Tenth Avenue                                   )
Brooklyn, New York 11219                            )
                                                    )
METHODIST HOSPITALS OF DALLAS d/b/a                 )
METHODIST CHARLTON MEDICAL CENTER,                  )
3500 West Wheatland Road                            )
Dallas, Texas 75237                                 )
                                                    )
METHODIST HOSPITALS OF DALLAS d/b/a                 )
METHODIST DALLAS MEDICAL CENTER,                    )
1441 North Beckley Avenue                           )
Dallas, Texas 75203                                 )
                                                    )
MONTEFIORE MEDICAL CENTER,                          )
111 East 210th Street                               )
Bronx, New York 10467                               )
                                                    )
MOUNT SINAI MEDICAL CENTER OF                       )
FLORIDA, INC.,                                      )
4300 Alton Road                                     )
Miami Beach, Florida 33140                          )

NEWYORK-PRESBYTERIAN/QUEENS,       )
56-45 Main Street                  )
Flushing, New York 11355           )
                                   )
NORTH CAROLINA BAPTIST HOSPITAL,   )
Medical Center Boulevard           )
Winston-Salem, North Carolina 27157 )
                                   )
NYU HOSPITALS CENTER, successor in interest to   )
LUTHERAN MEDICAL CENTER            )
150 55th Street                    )
Brooklyn, New York 11220           )
                                   )
NORTH SHORE UNIVERSITY HOSPITAL,   )
300 Community Drive                )
Manhasset, New York 11030          )
                                   )
SHANDS JACKSONVILLE MEDICAL CENTER, INC.   )
d/b/a UF HEALTH JACKSONVILLE,      )
655 West Eighth Street             )
Jacksonville, Florida 32209        )
                                   )
SHANDS TEACHING HOSPITAL AND CLINICS, INC.  )
d/b/a UF HEALTH SHANDS HOSPITAL    )
1600 Southwest Archer Road         )
Gainesville, Florida 32608         )
                                   )
SOUTHSIDE HOSPITAL                 )
301 East Main Street               )
Bay Shore, New York 11706          )
                                   )
STATEN ISLAND UNIVERSITY HOSPITAL, )
475 Seaview Avenue                 )
Staten Island, New York 10305      )
                                   )
THE NEW YORK AND PRESBYTERIAN HOSPITAL,   )
525 East 68th Street               )
New York, New York 10065           )
                                   )
THE NEW YORK METHODIST HOSPITAL,   )
506 Sixth Street                   )
Brooklyn, New York 11215           )

| | |
|---|---|
| THE UNIVERSITY HOSPITAL OF ROCHESTER d/b/a | ) |
| STRONG MEMORIAL HOSPITAL, | ) |
| 601 Elmwood Avenue | ) |
| Rochester, New York 14642 | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| SYLVIA M. BURWELL, Secretary | ) |
| United States Department of | ) |
| Health and Human Services, | ) |
| 200 Independence Avenue, S.W. | ) |
| Washington, DC 20201, | ) |
| | ) |
| Defendant. | ) |
| | ) |

## COMPLAINT FOR JUDICIAL REVIEW AND DECLARATORY AND INJUNCTIVE RELIEF UNDER THE MEDICARE ACT

### NATURE OF ACTION

1.     The plaintiff Hospitals in this instant action are the same plaintiffs in *Allina Health Services v. Sebelius*, 746 F.3d 1102 (D.C. Cir. 2014) ("*Allina I*").  The central legal issue in that earlier case, involving cost years beginning in federal fiscal year 2007, was whether Medicare "enrollees in Part C are 'entitled to benefits' under Part A, such that they should be counted in the Medicare [part A/SSI] fraction, or whether, if not regarded as 'entitled to benefits under Part A,' they should instead be included in the Medicaid fraction" of the Medicare disproportionate share hospital ("DSH") adjustment.  *Id. at* 1105.  In *Allina I*, the D.C. Circuit affirmed this Court's vacatur of a procedurally invalid rulemaking that changed the agency's policy on part C days.  *Id.* at 1111.  The D.C. Circuit held, however, that the question of whether and how the agency could reinstate that vacated part C policy on remand was not yet presented.  *Id*.

2.      Within weeks following the vacatur, the Secretary reinstated the prior policy by announcing on the agency's website that part C days would be treated as part A days for federal fiscal year 2012, a year subject to the vacatur.  A year and a half later, the Secretary issued a decision on the *Allina I* remand, again treating the Hospitals' part C days as part A days in the DSH calculation.

3.      The part C policy stated in the remand decision is both procedurally and substantively invalid.  The only path open to the agency to reinstate the policy from its vacated rulemaking was notice and comment rulemaking, which it has not done.  Moreover, the Secretary cannot retroactively apply the new part C policy to the 2007 cost years at issue in this suit. Finally, the part C policy fails any test of reasoned decision-making and is inconsistent with congressional intent.  Plaintiff Hospitals have brought this further action to prevent the agency from treating part C days as part A days in their DSH calculations for periods prior to October 1, 2013 absent proper notice and comment rulemaking.

## JURISDICTION AND VENUE

4.      This action arises under the Medicare Act, Title XVIII of the Social Security Act, 42 U.S.C. § 1395 et seq., and the Administrative Procedure Act ("APA"), 5 U.S.C. § 551 et seq.

5.      Jurisdiction is proper under 42 U.S.C. § 1395oo(f)(l).

6.      Venue is proper in this judicial district under 42 U.S.C. § 1395oo(f)(l).

## PARTIES

7.      The plaintiffs in this action are:

   a) Allina Health System d/b/a Abbott Northwestern Hospital, Medicare Provider No. 24-0057;

   b) Allina Health System d/b/a Cambridge Medical Center, Medicare Provider No. 24-0020;

c)  Allina Health System d/b/a Owatonna Hospital, Medicare Provider No. 24-0069;

d)  Allina Health System d/b/a United Hospital, Medicare Provider No. 24-0038;

e)  Allina Health System d/b/a Unity Hospital, Medicare Provider No. 24-0132;

f)  Florida Health Sciences Center, Inc. d/b/a Tampa General Hospital, Medicare Provider No. 10-0128;

g)  Henry Ford Health System d/b/a Henry Ford Hospital, Medicare Provider No. 23-0053;

h)  Henry Ford Health System f/d/b/a Henry Ford Macomb Hospital - Warren Campus, Medicare Provider No. 23-0204;

i)  Highland Hospital of Rochester, Medicare Provider No. 33-0164;

j)  Kaleida Health, Medicare Provider No. 33-0005;

k)  Kingsbrook Jewish Medical Center, Medicare Provider No. 33-0201;

l)  Long Island Jewish Medical Center, Medicare Provider No. 33-0195;

m) Long Island Jewish Medical Center d/b/a Forest Hills Hospital, Medicare Provider No. 33-0353;

n)  Long Island Jewish Medical Center d/b/a Franklin Hospital, Medicare Provider No. 33-0372;

o)  Maimonides Medical Center, Medicare Provider No. 33-0194;

p)  Methodist Hospitals of Dallas d/b/a Methodist Charlton Medical Center, Medicare Provider No. 45-0723;

q)  Methodist Hospitals of Dallas d/b/a Methodist Dallas Medical Center, Medicare Provider No. 45-0051;

r)  Montefiore Medical Center, Medicare Provider No. 33-0059;

s)  Mount Sinai Medical Center of Florida, Inc., Medicare Provider No. 10-0034;

t)  NewYork-Presbyterian/Queens, Medicare Provider No. 33-0055;

u)  North Carolina Baptist Hospital, Medicare Provider No. 34-0047;

v)  North Shore University Hospital, Medicare Provider No. 33-0106;

w) NYU Hospitals Center as successor in interest to Lutheran Medical Center, Medicare Provider No. 33-0306;

x) Shands Jacksonville Medical Center, Inc. d/b/a UF Health Jacksonville, Medicare Provider No. 10-0001;

y) Shands Teaching Hospital and Clinics, Inc. d/b/a UF Health Shands Hospital, Medicare Provider No. 10-0113;

z) Southside Hospital, Medicare Provider No. 33-0043;

aa) Staten Island University Hospital, Medicare Provider No. 33-0160;

bb) The New York and Presbyterian Hospital, Medicare Provider No. 33-0101;

cc) The New York Methodist Hospital, Medicare Provider No. 33-0236; and

dd) The University of Rochester d/b/a Strong Memorial Hospital, Medicare Provider No. 33-0285.

8. The defendant is Sylvia M. Burwell, in her official capacity as Secretary of the United States Department of Health and Human Services ("HHS"), the federal agency that administers the Medicare program. References to the Secretary herein are meant to refer to her, to her subordinates, and to her official predecessors or successors as the context requires.

9. The Centers for Medicare and Medicaid Services ("CMS") is a component of HHS with responsibility for day-to-day operation and administration of the Medicare program. CMS was formerly known as the Health Care Financing Administration. References to CMS herein are meant to refer to the agency and its predecessors.

## LEGAL AND REGULATORY BACKGROUND

### Medicare DSH Payment

10. Part A of the Medicare Act covers "inpatient hospital services." 42 U.S.C. § 1395d(a)(l). Since 1983, the Medicare program has paid most hospitals for the operating costs of inpatient hospital services under the prospective payment system ("PPS"). 42 U.S.C. §§ 1395ww(d)(l)-(5); 42 C.F.R. Part 412. Under PPS, Medicare pays predetermined,

standardized amounts per discharge, subject to certain payment adjustments. *Id.* One of the PPS payment adjustments is the DSH payment. *See* 42 U.S.C. § 1395ww(d)(5)(F); 42 C.F.R. § 412.106.

11.     Under the statutory provisions in effect during the period at issue here, a hospital that serves a disproportionate share of low-income patients is entitled to an upward percentage adjustment to the standard PPS rates. *See* 42 U.S.C. § 1395ww(d)(5)(F); *see also* 42 C.F.R. § 412.106. A hospital may qualify for a DSH adjustment based on its "disproportionate patient percentage." *See* 42 U.S.C. §§ 1395ww(d)(5)(F)(i)(I) and (d)(5)(F)(v); 42 C.F.R. § 412.106(c)(1). As a proxy for utilization by low-income patients, the disproportionate patient percentage determines a hospital's qualification as a DSH, and it also determines the amount of the DSH adjustment. *See* 42 U.S.C. §§ 1395ww(d)(5)(F)(iv) and (vii)-(xiii); 42 C.F.R. § 412.106(d). The disproportionate patient percentage is defined as the sum of two fractions expressed as percentages. 42 U.S.C. § 1395ww(d)(5)(F)(vi).

12.     The first fraction that is used to compute the DSH payment is commonly known as the "Medicaid fraction." The statute defines the Medicaid fraction as:

> the fraction (expressed as a percentage), the numerator of which is the number of the hospital's patient days for such period which consist of patients who (for such days) were eligible for medical assistance under a State plan approved under [Title XIX], but who were *not entitled to benefits under part A* of [Title XVIII], and the denominator of which is the total number of the hospital's patient days for such period.

42 U.S.C. § 1395ww(d)(5)(F)(vi)(II) (emphasis added). As reflected in the italicized language above, the numerator of the Medicaid fraction consists of days for patients who were both

eligible for medical assistance under Title XIX, or Medicaid, and "not entitled to benefits under part A" of Title XVIII, or Medicare.[1]

13.    The other fraction that is used to compute the DSH payment is the "Medicare part A/SSI fraction" or "SSI fraction."  The statute defines this fraction as:

> the fraction (expressed as a percentage), the numerator of which is the number of such hospital's patient days for such period which were made up of patients who (for such days) were *entitled to benefits under part A* of [Title XVIII] and were entitled to supplemental security income benefits (excluding any State supplementation) under subchapter XVI of this chapter, and the denominator of which is the number of such hospital's patient days for such fiscal year which were made up of patients who (for such days) were *entitled to benefits under part A* of [Title XVIII]...

42 U.S.C. § 1395ww(d)(5)(F)(vi)(I) (emphasis added).  As the italicized language indicates, the Medicare part A/SSI fraction consists solely of days for patients who were "entitled to benefits under part A" of Medicare.  The denominator includes all part A days, whereas the numerator includes only those part A days for patients who are also entitled to social security income ("SSI") benefits under Title XVI.  The Medicare part A/SSI fraction is computed for each federal fiscal year by CMS, and must be used to compute a hospital's DSH payment adjustment for the cost reporting period beginning in the federal fiscal year.  42 C.F.R. §§ 412.106(b)(2)-(3).

## Medicare Part C

14.    Section 4001 of the Balanced Budget Act of 1997, Pub. Law No. 105-33, added a new part C to Title XVIII of the Social Security Act to establish a Medicare program known as the Medicare+Choice program, now called Medicare Advantage.[2]  A Medicare beneficiary can elect to receive Medicare benefits either through the original fee-for-service program under

---

[1] The statute refers to "this subchapter," that is, subchapter XVIII of Chapter 7 of Title 42 of the U.S.C., which is Title XVIII of the Social Security Act.

[2] The Medicare Prescription Drug, Improvement, and Modernization Act of 2003 (Pub. L. 108-173), which was enacted on December 8, 2003, replaced the Medicare+Choice program with the new Medicare Advantage program under part C of Title XVIII.

Medicare parts A and B, or through enrollment in a Medicare Advantage plan under Medicare part C.  42 U.S.C. § 1395w-21(a)(1); 42 C.F.R. § 422.50; *see also* 63 Fed. Reg. 34,968, 34,968 (June 26, 1998) ("Under section 1851(a)(1), every individual entitled to Medicare Part A and enrolled under Part B ... may elect to receive benefits through *either* the existing Medicare fee-for-service program or a Part C M+C plan.") (emphasis added).

15.     Prior to the 2004 rulemaking, in which the agency attempted to adopt a new policy to begin counting part C days in the Medicare part A/SSI fractions, "the Secretary treated Part C patients as *not* entitled to benefits under Part A."  *Allina I*, 746 F.3d at 1106.  From 1986 through 2004, the Secretary implemented the statutory term "entitled to benefits under part A" through a regulation treating days as part-A-entitled only if the days were covered, or paid, by Medicare part A.  The regulation governing the calculation of the part A/SSI fraction directed the Secretary to determine "the number of covered patient days that … [a]re furnished to patients who … were entitled to both Medicare Part A and SSI." 42 C.F.R. § 412.106(b)(2)(i) (2003); *see* 42 C.F.R. § 409.3 (defining "covered" as  services for which payment is authorized).  As explained by the Secretary when it was adopted, this regulation mandates that only "covered Medicare Part A inpatient days" be included in the part A/SSI fraction.  51 Fed. Reg. 16,772, 16,788 (May 6, 1986); *see also* 51 Fed. Reg. 31,454, 31,460-61 (Sept. 3, 1986) (stating that limiting the Medicaid fraction to days where "the Medicaid program is the primary payor" was "consistent with" the part A/SSI fraction being limited to "covered days"); *Catholic Health Initiatives-Iowa Corp. v. Sebelius*, 718 F.3d 914, 921 n.5 (D.C. Cir. 2013) (noting that the pre-2004 regulation unambiguously limited the part A/SSI fraction to "covered Medicare Part A inpatient days").

16.     Further, there was written guidance prior to 2004 repeatedly expressing the Secretary's policy that part C days, as days for which patients were not entitled to part A payment, were to be excluded from the part A/SSI fraction.  This guidance included instructions to hospitals and program memoranda transmitting the part A/SSI fractions on an annual basis from the enactment of part C through the 2004 rulemaking.  *See, e.g.*, *Northeast Hosp. Corp. v. Sebelius*, 657 F.3d 1, 15 (D.C. Cir. 2011) (describing written guidance); HCFA Pub. 60A, Transmittal No. A-98-21 (July 1, 1998) (instructing non-teaching hospitals not to file "no-pay" the bills for services furnished to part C patients that would have been necessary to count part C days in the part A/SSI fraction); HCFA Pub. 60A, Transmittal No. A-98-36 (Oct. 1, 1998) (transmitting part A/SSI fractions that excluded part C days, specifying that the fractions include only "covered Medicare days," and referring to the ratio of SSI days and "covered Medicare days" as "the ratio of Medicare Part A patient days attributable to SSI recipients"); HCFA Pub. 60A, Transmittal No. A-99-42 (Sept. 1, 1999) (same); HCFA Pub. 60A, Transmittal No. A-00-54 (Aug. 17, 2000) (same); CMS Pub. 60A, Transmittal No. A-01-109 (Sept. 13, 2001) (same); CMS Pub. 60A, Transmittal No. A-02-086 (Sept. 11, 2002) (same); CMS Pub. 60A, Transmittal No. A-03-067 (Aug. 8, 2003) (same); CMS Pub. 100-04, Transmittal 275 (Aug. 13, 2004) (same).  The D.C. Circuit has twice reiterated the agency's pre-2004 policy on part C days "of excluding Part C days from the Medicare fraction and including them in the Medicaid fraction".  *Allina I*, 746 F.3d at 1108; *see also Northeast Hosp.*, 657 F.3d at 16 ("Aside from the Secretary's actual treatment of [part C] days, her statements … confirm that she changed her interpretation of the DSH provision in 2004.").

17.     In addition, the agency's unbroken, pre-2004 practice was to treat part C days as *not* part A days.  *Northeast Hosp.*, 657 F.3d at 16-17 (policy announced in 2004 "contradicts

[Secretary's] former practice of excluding M+C days from the Medicare fraction"); *Sw. Consulting DSH Medicare + Choice Days Grps. v. BlueCross BlueShield Ass'n,* PRRB Dec. No. 2010–D52, 2010 WL 4211391, at \*12 (Sept. 30, 2010), *reprinted in* Medicare & Medicaid Guide (CCH) ¶ 82,679 (reviewing evidence that from 1999 to 2004, the Secretary "never count[ed] M+C days in the [Medicare] fraction except rarely, and then by mistake").

18. In the May 2003 proposed rule for federal fiscal year 2004, the Secretary proposed "to clarify" her long held position that "once a beneficiary elects Medicare Part C, those patient days attributable to the beneficiary should not be included in the Medicare fraction of the DSH patient percentage." 68 Fed. Reg. 27,154, 27,208 (May 19, 2003). Further, "[t]hese days should be included in the count of total patient days in the Medicaid fraction (the denominator), and the patient's days for a [part C] beneficiary who is also eligible for Medicaid would be included in the numerator of the Medicaid fraction." *Id.* The Secretary explained that "once a beneficiary has elected to join a Medicare Advantage plan, that beneficiary's benefits are no longer administered under Part A." *Id.*

19. In 2004, however, in the preamble for the final rule for the federal fiscal year 2005, the Secretary reversed course and "abruptly announced a change in policy." *Allina Health Servs. v. Sebelius*, 904 F. Supp. 2d 75, 78 (D.D.C. 2012), *aff'd*, 746 F.3d at 1107-10. That 2004 rule announced that the Secretary would "adopt a policy" to include part C days in the Medicare part A/SSI fraction and exclude them from the Medicaid fraction effective October 1, 2004. 69 Fed. Reg. 48,916, 49,099 (Aug. 11, 2004); *see also Northeast Hosp.*, 657 F.3d at 16 ("[I]n the 2004 rulemaking [the Secretary] announced that she was 'adopting a policy' of counting [part C] days in the Medicare fraction").

20.    CMS altered the regulation in 2004 to delete the word "covered," but did not otherwise revise the regulation text at that time.   69 Fed. Reg. at 49,246.   And when CMS initially transmitted the part A/SSI fractions for federal fiscal years 2005 and 2006, those fractions continued to exclude part C days.   See CMS Pub. 100-04, Transmittal 1091 (Oct. 27, 2006), *reprinted in* Medicare & Medicaid Guide (CCH) ¶ 156,277 (transmitting federal fiscal year 2005 part A/SSI fractions and specifying that the fractions include only "covered Medicare days," and referring to the ratio of SSI days and "covered Medicare days" as "the ratio of Medicare Part A patient days attributable to SSI recipients"); CMS Pub. 100-04, Transmittal 1396 (Dec. 14, 2007), *reprinted in id*. ¶ 156,930 (same for federal fiscal year 2006 fractions).

21.    In July 2007, CMS issued a revision to the Medicare Claims Processing Manual, with a "purported 'effective date' of October 1, 2006," *i.e.*, retroactive to the beginning of fiscal year 2007, that *permitted* hospitals to submit the data necessary to implement the new policy regarding part C days.   *Allina Health Servs.*, 904 F. Supp. 2d at 82.   Thereafter, in August 2007, again without providing notice or the opportunity for comment, the Secretary further amended the text of the DSH regulation governing part C days.   72 Fed. Reg. 47,130, 47,384 (Aug. 22, 2007).   Following the amendments in 2004 and 2007, the regulation provided that the part A/SSI fraction includes all patient days (not just "covered" days) for "patients entitled to Medicare Part A (*or Medicare Advantage (Part C)*)."   *Id.* at 47,411 (amending §§ 412.106(b)(2)(i)(B) and (iii)(B)) (emphasis added).   The amendment of the regulation was made effective October 1, 2007, the beginning of federal fiscal year 2008.   *Id.* at 47,130; *see also Allina Health Servs.*, 904 F. Supp. 2d at 82.

### The Original *Allina I* Litigation

22.     For fiscal years 2005 and 2006, CMS continued to publish part A/SSI fractions that excluded part C days.  *See* CMS Pub. 100-04, Transmittal 1091 (Oct. 27, 2006), *reprinted in* Medicare & Medicaid Guide (CCH) ¶ 156,277 (transmitting fiscal year 2005 part A/SSI fractions); CMS Pub. 100-04, Transmittal 1396 (Dec. 14, 2007), *reprinted in id.* ¶ 156,930 (fiscal year 2006).  The Hospitals correspondingly saw no material decline in their part A/SSI fractions. Moreover, during fiscal year 2007, the Hospitals continued to receive interim payments that remained steady, based on part A/SSI fractions that excluded part C days even after the agency's announced change.  *See* 42 C.F.R. §§ 413.64(e), (f) (requiring the Secretary's contractors to use the latest-available part A/SSI fraction calculated by the agency).  In July 2009, the Secretary first published part A/SSI fractions for hospital cost reporting periods beginning in federal fiscal year 2007.  These fractions for the first time included part C days, and resulted in a projected reduction in DSH payments to the thirty Hospitals in this case that exceeded $ 40 million in the aggregate for just the cost years at issue in this case.

23.     Following the 2009 publication of the substantially reduced part A/SSI fractions, the hospitals in this present action filed *Allina I*.  In *Allina I*, the Hospitals challenged the applicability of the rulemaking to cost reporting periods beginning in federal fiscal year 2007, contending, among other things, that the abrupt reversal in policy did not meet notice and comment requirements and was not the product of reasoned decision making because the agency failed to acknowledge or explain its departure from past policy.

24.     This Court agreed and held that the policy announced in the rulemaking regarding part C days was not the logical outgrowth of a proposed rule.  904 F. Supp. 2d at 89-92.  This Court also held that the "cursory explanation in the 2004 Final Rule failed to meet the

requirements of the APA" because "the Secretary[] fail[ed] to acknowledge her 'about-face,'" and "her reasoning for the change was brief and unconvincing." *Id.* at 93 (quoting *Northeast Hosp.*, 657 F.3d at 15). Accordingly, this Court concluded that "[t]he portion of the 2004 Final Rule … that announced the Secretary's interpretation of the Medicare Disproportionate Share Hospital Fraction, as codified in 2007 at 42 C.F.R. § 412.106(b)(2) and as further modified in 2010, will be vacated, and the case will be remanded to the Secretary for further action consistent with this Opinion." *Id*. at 95.

25.     Approximately one month after the Court ruled, it issued a post-judgment order responding to the government's request that the Court clarify the scope of its judgment. The Court noted that its ruling "necessarily included a finding that the 2004 Final Rule—on which the Secretary relied in defending the FY 2007 calculations . . . —was procedurally defective and, therefore, infirm *ab initio*." Post-Judgment Order, ECF No. 47, at 2 (Dec. 18, 2012). In this Order, the Court also stated that its prior judgment "remanded the case to the Secretary to recalculate [the] reimbursements [at issue] without using the interpretation set forth in the 2004 Final Rule." *Id*. The government appealed.

26.     While the appeal was pending, the agency engaged in a new rulemaking on the treatment of part C days. In that rulemaking, the agency "proposed to readopt the policy of counting the days of patients enrolled in [part C] plans in the Medicare fraction" "in an abundance of caution." 78 Fed. Reg. 50,496, 50,615 (Aug. 19, 2013). Accordingly, effective as of October 1, 2013, the rule governing the DSH calculation is the same as the vacated rule had been. *See id.* at 50,619 (rule "readopt[ion]" applies to "FY 2014 and subsequent years" only).

27.     On April 1, 2014, the D.C. Circuit affirmed this Court's *Allina I* decision on the merits, "agree[ing] with the district court that the Secretary's final rule was not a logical

outgrowth of the proposed rule." 746 F.3d at 1109. Because this procedural failure was a sufficient basis to vacate the rule, the D.C. Circuit did not reach the arbitrariness of the Secretary's explanation. *Id.* at 1111.

28.     With respect to remedy, the D.C. Circuit held that this Court "correctly concluded that vacatur was warranted." *Id.* The court reversed, however, that part of this Court's remedy that "ordered the Secretary to recalculate the hospitals' reimbursements 'without using the interpretation set forth in the 2004 Final Rule.'" *Id.* (quoting the Post-Judgment Order). The Secretary had requested that the court hold the agency was "free to reach the same result through case-by-case adjudication." Br. of Appellant Sebelius, *Allina I*, Nos. 13-5011, 13-5015, 2013 WL 4629174, at *49 (D.C. Cir. Aug. 29, 2013). The D.C. Circuit declined the invitation to make that holding, however. Instead, it held that the "question whether the Secretary could reach the same result" on remand as would have applied under the vacated rule "was not before the district court" and therefore this Court should have simply "remand[ed] after identifying the error." *Allina I*, 746 F.3d at 1111. The D.C. Circuit noted that "only in rare cases. . . does the court direct the agency how to resolve a problem." *Id.* at 1111 n.6.

29.     In June 2014, a few weeks after the *Allina I* vacatur became final, CMS determined to treat part C days as part A days for years covered by the vacatur. CMS thereafter published part A/SSI fractions for every hospital in the country, including the prevailing hospitals from *Allina I*, for cost years beginning in federal fiscal year 2012 that applied the policy determination to treat part C days as part A days.[3] The agency provided no explanation for the Secretary's determination treat part C days as part A days.

---

[3] 2012 Part A/SSI Fraction Data File. *Available at* http://www.cms.gov/Medicare/Medicare-Fee-for-Service-Payment/AcuteInpatientPPS/Downloads/FY-2012-SSI-Ratios-for-web-posting.zip.

30.     Dissatisfied with this new policy determination on part C days, certain *Allina I* hospital plaintiffs filed a separate complaint challenging the Secretary's June 2014 no-notice determination to treat part C days as part A days for federal fiscal year 2012.  *See Allina Health Servs. et al., v. Burwell*, Docket No. 1:14-cv-01415-GK (D.D.C., Aug. 19, 2014) (*Allina II*).   In *Allina II*, this Court recently denied the government's motion to dismiss and briefing on cross-motions for summary judgment is proceeding.

## FACTS SPECIFIC TO THIS CASE

31.     On December 5, 2014, the Administrator of CMS issued a notice that the hospitals' appeals in the *Allina I* case were "now before the Administrator of CMS for a determination of the appropriate statutory interpretation in the absence of the vacated 2004 rule to be used to calculate the providers' DSH payment with respect to the treatment of the Part C days for FY 2007."

32.     On January 23, 2015, the hospitals submitted comments in response to the Administrator's notification of review on remand.   Under cover of a letter dated December 2, 2015 and received by the Hospital's counsel by mail on December 7, 2015, the Administrator issued its decision on remand, concluding that "days associated with Medicare patients who are enrolled in a Part C plan are to be included in the numerator and denominator of the Medicare fraction" for the hospitals' cost reporting periods at issue.   The Administrator stated that this decision on remand was the final determination of the Secretary.

33.     Hospitals that are dissatisfied with a final decision of the Secretary may bring an action in this court to challenge the decision within 60 days of receipt of notice of the decision. 42 U.S.C. § 1395oo(f)(1); 42 C.F.R. §§ 405.1877(a), (f).

34.     The hospitals have timely initiated this action for judicial review.

## ASSIGNMENT OF ERRORS

35.    The Medicare statute provides for judicial review of the question presented here "pursuant to the applicable provisions under chapter 7 of title 5," *i.e.*, the APA.   42 U.S.C. § 1395oo(f)(l).

36.    The applicable provisions of the APA provide that the "reviewing court shall . . . hold unlawful and set aside agency action . . . found to be . . . (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; . . .(C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; (D) without observance of procedure required by law; [or] (E) unsupported by substantial evidence[.]"  5 U.S.C. § 706(2).

37.    The remand decision is procedurally invalid under the APA, 5 U.S.C. § 553, and the Medicare Act, 42 U.S.C. § 1395hh, including for the reasons described below.

38.    It is invalid under the APA because it attempts to depart from a binding regulation through an adjudication.  It is "'axiomatic that an agency must adhere to its own regulations.'" *Exportal Ltda v. United States*, 902 F.2d 45, 49 (D.C. Cir. 1990) (quoting *Brock v. Cathedral Bluffs Shale Oil Co.*, 796 F.2d 533, 536 (D.C. Cir. 1986) (Scalia, J.)).  "[U]nless and until [an agency] amends or repeals a valid legislative rule or regulation, [the] agency is bound by such a rule or regulation," *Am. Fed'n of Gov't Emps. v. Fed. Labor Relations Auth.*, 777 F.2d 751, 759 (D.C. Cir. 1985).  The *Allina I* vacatur restored the pre-2004 regulation.  *Action on Smoking & Health v. Civil Aeronautics Bd.,* 713 F.2d 795, 797-98 (D.C. Cir. 1983) ("[B]y vacating or rescinding [one rule], the judgment of this court had the effect of reinstating the rules previously in force.").  That regulation excluded part C days from the part A/SSI fraction because it permitted only "covered Medicare Part A inpatient days" to be included in the fraction.  *Catholic Health Initiatives-Iowa*, 718 F.3d at 921 n.5.  CMS may not "effectively repeal legislative rules

and abandon longstanding interpretations of statutes indirectly, by adjudication, without providing affected parties any opportunity to comment on the proposed changes." *Am. Fed'n of Gov't Emps.*, 777 F.2d at 759. Accordingly, the APA requires that the agency undertake notice and comment rulemaking before treating part C days as part A days.

39. The remand decision is also procedurally invalid because it retroactively "establishes or changes a substantive legal standard governing … the payment for services." 42 U.S.C. § 1395hh(a)(2). Under the Medicare Act, such a change can be accomplished only through proper notice and comment rulemaking. *Id.* § 1395hh.

40. By applying a part C rule adopted after the cost years at issue (August 2013 or June 2014) that is "substantively inconsistent with a prior agency practice," the remand decision likewise violates the APA's command against retroactive rulemaking, *Northeast Hosp.*, 657 F.3d at 14 (internal quotation marks omitted), and is procedurally invalid to the extent it applies the procedurally invalid June 2014 rule.

41. In addition to these procedural infirmities, the treatment of part C days as part A days is also substantively invalid, including for the reasons described further below, because the agency did not "consider the matter in a detailed and reasoned fashion" and the part C policy is not "consistent with the underlying statutory scheme in a substantive sense." *ITT Indus., Inc. v. NLRB*, 251 F.3d 995, 1004 (D.C. Cir. 2001).

42. First, the agency has failed the test of reasoned decision-making because it has not followed the law of the case. In *Allina I*, the very case on remand, the D.C. Circuit held (again) that prior to the 2004 rulemaking, the agency had a long-standing policy of excluding part C days from the part A/SSI fraction and including them in the Medicaid fraction (if Medicaid eligible). *See Allina I*, 746 F.3d at 1108. (describing the agency's "policy … of excluding Part C

days from the Medicare fraction and including them in the Medicaid fraction"). Yet the remand decision is premised on the precise opposite assertion with respect to the agency's prior policy. That holding in *Allina I* binds CMS on this remand and does not permit the agency to issue a decision that disregards the *Allina I* court's holding regarding the pre-2004 policy. *See Carpet, Linoleum, Soft Tile & Resilient Floor Covering Layers v. NLRB*, 467 F.2d 392, 404 (D.C. Cir. 1972) (agency bound on remand by law of the case from court of appeals).

43. The agency's issuance of a remand decision that is nothing more than a "a barren exercise of supplying reasons to support a pre-ordained result" likewise fails the APA's reasoned decision-making commands. *Food Mktg. Inst. v. Interstate Commerce Comm'n*, 587 F.2d 1285, 1290 (D.C. Cir. 1978). "Post-hoc rationalizations by the agency on remand are no more permissible than are such arguments when raised by appellate counsel during judicial review." *Id.*

44. The remand decision also addresses numerous other considerations irrationally or leaves them entirely unexplained, rendering the decision wholly arbitrary and capricious. For example, the remand decision is premised on an assertion about the agency's prior policy on part C days (or lack thereof) that is not supported by substantial evidence and has already been twice rejected by the D.C. Circuit. *See Allina I*, 746 F.3d at 1106; *Northeast Hosp.*, 657 F.3d at 14-17. That is the hallmark of arbitrariness. *Ctr. for Auto Safety v. Fed. Highway Admin.*, 956 F.2d 309, 314 (D.C. Cir. 1992) (Thomas, J.) ("An agency action is arbitrary and capricious if it rests upon a factual premise that is unsupported by substantial evidence."). Furthermore, the "requirement of reasoned decisionmaking demands that [the agency] 'display awareness that it is changing position,'" which the remand decision does not do. *Am. Elec. Power Serv. Corp. v. FCC*, 708 F.3d 183, 186 (D.C. Cir. 2013) (quoting *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515

(2009)).  The remand decision also demonstrates that the agency still has "entirely failed to consider an important aspect of the problem," *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983), including but not limited to the financial impact to safety-net hospitals in the amount of hundreds of millions of dollars per year, *Northeast Hosp.*, 657 F.3d at 5.  For these and other reasons, including the agency's continued irrational attempt to "reconcile the possibility of two different definitions of the word 'entitled' in the same sentence" of the DSH statute, *Allina Health Servs.*, 904 F. Supp. 2d at 94, the remand decision is arbitrary and capricious because the agency has "offered an explanation for its decision that runs counter to the evidence before the agency [and] is so implausible that it could not be ascribed to … agency expertise." *Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43.

45.     A policy treating part C days as part A days is also contrary to the intent of Congress in enacting the DSH statute and fails the reasonableness test under *Chevron* step two.[4] *See Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837 (1984).  The policy "conflict[s] with the policy judgments that undergird the statutory scheme."  *Health Ins. Ass'n of Am., Inc. v. Shalala*, 23 F.3d 412, 416 (D.C. Cir. 1994), and is impermissible, *see Goldstein v. SEC*, 451 F.3d 873, 883 (D.C. Cir. 2006) (rejecting policy under *Chevron* step two where it was not "rational when viewed in light of the policy goals underlying the" applicable statute).

46.     Finally, even if CMS could adopt this part C policy through an adjudication, which it cannot, it cannot retroactively apply the policy to the years at issue in this case.  The part C policy "represents an abrupt departure from well-established practice," and there is no "statutory interest in applying a new rule" retroactively—rather, the part C policy conflicts with

---

[4] Neither the district court nor the D.C. Circuit resolved this issue in their *Allina I* decisions. *See Allina I*, 746 F.3d at 1107 ("We did not reach the question whether the Secretary's interpretation [of the DSH statute] was reasonable under step two" in *Northeast Hospital*.); *Allina Health Servs.*, 904 F. Supp. 2d at 87 ("[T]he Court agrees with the Hospitals as to the first two of their procedural arguments" and therefore "does not reach the Hospitals' other arguments").

statutory intent. *Clark-Cowlitz Joint Operating Agency v. FERC*, 826 F.2d 1074, 1081 (D.C. Cir. 1987). Moreover, given that the agency's 2007 regulation amendment was made prospectively applicable to fiscal year 2008, 72 Fed. Reg. at 47,130, and the continuation of the agency's practice of excluding part C days from the part A/SSI fraction in the period between the 2004 rule and the summer of 2007, the Hospitals reasonably relied upon a continuation of the DSH payments under the pre-existing policy through the end of fiscal year 2007. *See Clark-Cowlitz Joint Operating Agency,* 826 F.2d at 1081 (considering "the extent to which the party against whom the new rule is applied relied on the former rule" in determining whether to apply a new policy announced in adjudication retroactively). That pre-existing policy was restored by the *Allina I* vacatur, and retroactively apply a reversal of it now, nine years after the relevant services were provided, would require the hospitals to repay tens of millions of dollars to CMS. *See id.* (considering "the degree of the burden which a retroactive order imposes on a party").

## REQUEST FOR RELIEF

47. The plaintiff Hospitals request an Order:

A. declaring invalid and vacating the remand decision, and enjoining the Secretary from treating part C days as part A days for purposes of calculating the Hospitals' Medicare DSH payments for periods prior to October 1, 2013 absent proper notice and comment rulemaking;

B. directing the Secretary to calculate the plaintiff Hospitals' DSH payments consistent with that Order and to make prompt payment of any additional amounts due the plaintiff Hospitals plus interest calculated in accordance with 42 U.S.C. § 1395oo(f)(2);

C. requiring the Secretary to pay legal fees and cost of suit incurred by the plaintiff Hospitals; and

D.      providing such other relief as the Court may consider appropriate.

Respectfully Submitted,

*Stephanie a Webster*

Stephanie A. Webster
    DC Bar No. 479524
Hyland Hunt
    DC Bar No. 999276
Alex J. Talley
    DC Bar No. 1020488
AKIN GUMP STRAUSS HAUER & FELD LLP
1333 New Hampshire Avenue, N.W.
Washington, D.C.  20036
Phone: (202) 887-4049
Fax: (202) 887-4288
swebster@akingump.com

Counsel for Plaintiffs

Dated:   January 29, 2016