# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| ALLINA HEALTH SERVICES, *et al.*, | : | | |
| | : | | |
| Plaintiffs, | : | Civil Action No.: | 16-0150 (RC) |
| | : | | |
| v. | : | Re Document No.: | 9 |
| | : | | |
| THOMAS E. PRICE,[1] Secretary, | : | | |
| U.S. Department of Health and Human Services | : | | |
| | : | | |
| Defendant. | : | | |

## <u>MEMORANDUM OPINION</u>

### DENYING DEFENDANT'S MOTION TO DISMISS

## I. INTRODUCTION

Medicare, the federal, single-payer program that pays for health coverage for most Americans aged 65 and older, is governed by an incredibly complex scheme of statutory provisions and regulations. This lawsuit joins a long line of cases related to one provision—the reimbursement formula for certain hospitals serving low-income patients.

Plaintiffs are more than two dozen[2] hospitals (the "Hospitals") that serve "a significantly disproportionate number of low-income patients" without private health insurance. 42 U.S.C. §

---

[1] United States Secretary of Health and Human Services Thomas E. Price is automatically substituted for Sylvia M. Burwell pursuant to Federal Rule of Civil Procedure 25(d). *See* Fed. R. Civ. P. 25(d) ("An action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending. The officer's successor is automatically substituted as a party.").

[2] The full list of Plaintiff Hospitals includes: Allina Health System d/b/a Abbott Northwestern Hospital; Allina Health System d/b/a Cambridge Medical Center; Allina Health System d/b/a Owatonna Hospital; Allina Health System d/b/a United Hospital; Allina Health System d/b/a Unity Hospital; Florida Health Sciences Center, Inc. d/b/a Tampa General Hospital; Henry Ford Health System d/b/a Henry Ford Hospital; Henry Ford Health System f/d/b/a Henry Ford Macomb Hospital – Warren Campus; Highland Hospital of Rochester; Kaleida Health;

1395ww(d)(5)(F)(i)(I).  Medicare provides these "disproportionate share hospitals" ("DSH")

additional funding to help cover the costs of providing care to low-income patients.  The

Hospitals bring this lawsuit against the Secretary of Health and Human Services ("HHS")

Thomas Price to challenge the calculation of those payments.

The Secretary moves to dismiss the Hospitals' suit.  The Secretary's motion raises a

threshold question and argues that the Hospitals cannot challenge one portion of the Secretary's

decision on remand because the Hospitals failed to raise that claim in previous litigation.  For the

following reasons, the Secretary's motion is denied.

## II.  BACKGROUND

The Secretary's calculation of DSH payments has been entangled in extensive litigation.

The D.C. Circuit has set forth the relevant backdrop in "numbing detail."  *Ne. Hosp. Corp. v.*

*Sebelius* 657 F.3d 1, 18 (D.C. Cir. 2011) (Kavanaugh, J., concurring).  The district court's

opinion in *Allina I*, a direct predecessor to this lawsuit, provides extensive detail on the facts

originally giving rise to this matter before it was remanded to the agency.  *See Allina Health*

*Servs. v. Sebelius*, 904 F. Supp. 2d 75, 79–84 (D.D.C. 2012), *aff'd in part, rev'd in part*, 746 F.3d

1102 (D.C. Cir. 2014).  For the purposes of this case, the Court will begin by providing an

---

Kingsbrook Jewish Medical Center; Long Island Jewish Medical Center; Long Island Jewish
Medical Center d/b/a Forest Hills Hospital; Long Island Jewish Medical Center d/b/a Franklin
Hospital; Maimonides Medical Center; Methodist Hospitals of Dallas d/b/a Methodist Charlton
Medical Center; Methodist Hospitals of Dallas d/b/a Methodist Dallas Medical Center;
Montefiore Medical Center; Mount Sinai Medical Center of Florida, Inc.; New York-
Presbyterian/Queens; North Carolina Baptist Hospital; NYU Hospitals Center, successor in
interest to Lutheran Medical Center; North Shore University Hospital; Shands Jacksonville
Medical Center, Inc. d/b/a UF Health Jacksonville; Shands Teaching Hospital And Clinics, Inc.
d/b/a UF Health Shands Hospital; Southside Hospital; Staten Island University Hospital; The
New York And Presbyterian Hospital; The New York Methodist Hospital; and The University
Hospital of Rochester d/b/a Strong Memorial Hospital.  *See* Compl. at 1–4, ECF No. 1.

overview of the relevant statutory and regulatory background. The Court will then turn to the procedural history of this litigation, the Hospitals' allegations in this action, and the pending motion to dismiss.

## A. Statutory and Regulatory Background

### 1. General Medicare Provisions

Medicare is a federal program that provides health insurance for the elderly and certain disabled people. *See Catholic Health Initiatives Iowa Corp. v. Sebelius*, 718 F.3d 914, 915–16 (D.C. Cir. 2013). Secretary Price administers the Medicare program through the Centers for Medicare & Medicaid Services ("CMS"), which is an agency within HHS. The Medicare statute has five parts, *see id.* at 916, not all of which are relevant to this case.

Medicare Part A establishes the criteria for individuals to be eligible for Medicare benefits and provides those people with insurance for hospital and hospital-related services. *See* 42 U.S.C. § 1395c. These benefits include coverage for "inpatient hospital services," *id.* § 1395d(a)(1), which "generally refers to overnight stays in a hospital," *Catholic Health*, 718 F.3d at 916. Under Part A, Medicare payments for covered services are made directly to "provider[s] of services," such as hospitals. 42 U.S.C. §§ 1395f(a)-(b), 1395x(u).

Medicare Part B is an optional program that allows individuals covered by Part A (and some other individuals) to purchase supplementary insurance by paying monthly premiums. *See* 42 U.S.C. §§ 1395r–1395t. Part B makes payments on behalf of participants for additional medical items and services, such as outpatient treatment, clinical laboratory tests, medical equipment, and other services not covered by Part A. *See* 42 U.S.C. §§ 1395j–1395w-4.

Medicare Part C is an alternative, managed care program. *See* 42 U.S.C. § 1395w-21(a)(1). Part C (which was also known as Medicare + Choice and is now also referred to as

Medicare Advantage) is available to individuals who are "entitled to benefits under part A . . . and enrolled under part B." 42 U.S.C. § 1395w-21(a)(3). Instead of making direct payments to hospitals, Medicare pays the Part C plan a pre-determined per-patient rate from the Part A and Part B trust funds. *See* 42 U.S.C. §§ 1395w-23(f), 1395w-21(i)(1).

### 2. The Disproportionate Share Hospital Adjustment

Among many other provisions, Medicare Part E sets forth a prospective payment system for reimbursing hospitals that provide inpatient hospital services covered under Part A. *See* 42 U.S.C. § 1395ww(d). Under this system, Medicare reimburses hospitals for services based on prospectively determined national and regional rates instead of reimbursing the hospitals' actual costs. *See* 42 U.S.C. § 1395ww(d)(1)–(4). The prospective payment system also adjusts payments to hospitals based on various factors. Relevant to this case is the "disproportionate share hospital" ("DSH") adjustment, which requires Medicare to pay more for services provided by hospitals that "serve[ ] a significantly disproportionate number of low-income patients." 42 U.S.C. § 1395ww(d)(5)(F)(i)(I). The calculation of the DSH adjustment, in turn, depends on a hospital's "disproportionate patient percentage." 42 U.S.C. § 1395ww(d)(5)(F)(v)–(vii). This percentage is a "proxy measure" for the number of low-income patients served by a hospital, *see* H.R. Rep. No. 99-241, pt. 1, at 17 (1985), and reflects "Congress's judgment that low-income patients are often in poorer health, and therefore costlier for hospitals to treat," *Catholic Health*, 718 F.3d at 916 (citing *Adena Reg'l Med. Ctr. v. Leavitt*, 527 F.3d 176, 177–78 (D.C. Cir. 2008)).

The disproportionate patient percentage is not a straightforward percentage of low-income patients served by the hospital. Instead, the percentage is created by combining two

complex fractions, the SSI/Medicare fraction[3] and the Medicaid fraction.  The statute defines the

SSI/Medicare fraction as:

> [T]he fraction (expressed as a percentage), the numerator of which is the number of such hospital's patient days for such period which were made up of patients who (for such days) were entitled to benefits under part A of [Medicare] and were entitled to supplementary security income [SSI] benefits . . . , and the denominator of which is the number of such hospital's patient days for such fiscal year which were made up of patients who (for such days) were entitled to benefits under part A of [Medicare] . . . .

42 U.S.C. § 1395ww(d)(5)(F)(vi)(I).  The Medicaid fraction is defined as:

> [T]he fraction (expressed as a percentage), the numerator of which is the number of the hospital's patient days for such period which consist of patients who (for such days) were eligible for medical assistance under a State [Medicaid plan], but who were not entitled to benefits under part A of [Medicare], and the denominator of which is the total number of the hospital's patient days for such period.

42 U.S.C. § 1395ww(d)(5)(F)(vi)(II).

The D.C. Circuit has described this language as "byzantine" and noted that its meaning is

"not easily discernible."  *Catholic Health*, 718 F.3d at 916.  Put as simply as possible, the two

fractions stand for two different markers of low income—SSI and Medicaid—that, taken

together, roughly represent the low-income population served by a hospital.  In other words,

the SSI/Medicare fraction "effectively asks, out of all patient days *from Medicare*

*beneficiaries,* what percentage of those days came from Medicare beneficiaries

who *also* received SSI benefits?"  *Id.* at 917 (emphasis in original).  At the same time, the

Medicaid fraction "asks, out of all patient days *in total,* what percentage of those days came from

---

[3] The Hospitals refer to the SSI/Medicare fraction as the "SSI fraction," *see, e.g.*, Def.'s Mem. P. & A. Supp. Mot. Dismiss ("Def.'s Mem.") at 7, ECF No. 9-1, while the Secretary refers to this fraction as the "part A/SSI fraction," *see, e.g.*, Pls.' Opp'n Def.'s Mot. Dismiss ("Pls.' Opp'n") at 4, ECF No. 12.  Other courts refer to this fraction as the "Medicare fraction."  *See, e.g.*, *Catholic Health*, 718 F.3d at 916.  To avoid confusion, the Court will refer to this calculation as the "SSI/Medicare fraction."

patients who received benefits under Medicaid, but *not* under Medicare?"  *Id.* at 917 (emphasis

in original).  A visual representation is helpful to understanding the relationship between the two

fractions:[4]

| | **SSI/Medicare Fraction** | **Medicaid Fraction** |
|---|---|---|
| Numerator | Patient days for patients "entitled to benefits under part A" and "entitled to SSI benefits" | Patient days for patients "eligible for [Medicaid]" but not "entitled to benefits under part A" |
| Denominator | Patient days for patients "entitled to benefits under part A" | Total number of patient days |

The SSI/Medicare fraction is calculated annually by CMS.  *See* 42 C.F.R. §

412.106(b)(2).  The Medicaid fraction, however, is calculated by agency contractors using data

from hospital cost reports.  *See* 42 C.F.R. § 412.106(b)(4).  After a hospital files a cost report, the

contractor issues a final determination as to the amount of Medicare payment due the hospital,

and that determination is called a Notice of Program Reimbursement ("NPR").  *See* 42 C.F.R. §

405.1803(a).  Among other things, the NPR takes into account both the Medicaid Fraction that

the contractor calculates and publishes and the SSI/Medicare Fraction previously published by

CMS for the relevant reporting year.  *See* 42 C.F.R. § 412.106(b)(5).

3.  The 2004 Rulemaking

A central question in this case, and in a range of other lawsuits, is whether enrollees in

Medicare Part C are "entitled to benefits" under Part A, such that they should be included in the

SSI/Medicare fraction, or if they are not, whether they should therefore be included in the

Medicaid fraction.  Before 2003, the Secretary treated individuals covered by Part C as not

---

[4] The D.C. Circuit has relied on similar graphics to illustrate the two fractions.  *See Catholic Health*, 718 F.3d at 916; *Ne. Hosp. Corp.*, 657 F.3d at 3.

entitled to benefits under Part A.  *See Allina I*, 746 F.3d at 1106 (citing *Ne. Hosp. Corp.*, 657

F.3d at 16–17).

Considerable confusion surrounded this treatment, and the Secretary issued a notice of

proposed rulemaking in 2003.  *See* Medicare Program, Proposed Changes to the Hospital

Inpatient Prospective Payment Systems and Fiscal Year 2004 Rates, 68 Fed. Reg. 27,154 (May

19, 2003).  The notice stated that the agency "propos[ed] to clarify that once a beneficiary elects

Medicare Part C, those patient days attributable to the beneficiary should not be included in the

[SSI/Medicare] fraction of the DSH patient percentage.  These patient days should be included in

the count of total patient days in the Medicaid fraction."  *Id*. at 27,208.  The following year, the

Secretary announced a final rule adopting the opposite interpretation, stating that the agency was

"not adopting . . . our proposal . . . to include the days associated with [Part C] beneficiaries in

the Medicaid fraction."  Medicare Program: Changes to the Hospital Inpatient Prospective

Payment Systems and Fiscal Year 2005 Rates, 69 Fed. Reg. 48,916, 49,099 (Aug. 11, 2004).

Instead, the agency explained that it was "adopting a policy to include the patient days for [Part

C] beneficiaries in the Medicare fraction."  *Id.*  Despite the promulgation of the rule in 2004, "the

Code of Federal Regulations was never actually amended, so in 2007 the Secretary issued a

'technical correction,' conforming the language of the C.F.R. to the 2004 rule."  *Allina I*, 746

F.3d at 1106 n.3; *see also* Medicare Program; Changes to the Hospital Inpatient Prospective

Payment System and Fiscal Year 2008 Rates, 72 Fed. Reg. 47,130, 47,384 (Aug. 22, 2007).

## B. The *Allina I* Litigation[5]

The Hospitals then filed an administrative appeal to challenge the 2004 rule. *See Allina I*, 904 F. Supp. 2d at 83, *aff'd in part, rev'd in part*, 746 F.3d 1102 (D.C. Cir. 2014). The Provider Reimbursement Review Board ("PRRB") heard the appeal, denied relief, and granted expedited judicial review. *Id.* The Hospitals sought—and the PRRB granted—expedited judicial review on the question of "[w]hether the Secretary unlawfully treats Medicare Advantage Days, which are paid under Medicare Part C, as days for which patients are entitled to benefits under Medicare Part A for purposes of calculating the Medicare DSH adjustment." *See* Def.'s Mot Dismiss, Ex. B at 25, ECF No. 9-4.[6] The Hospitals then sought judicial review in this Court, in a case that is now known as *Allina I*. *See Allina I*, 904 F. Supp. 2d at 83.

In that case, the Hospitals challenged the Secretary's "calculation of a component of the DSH calculation known as the '[SSI/Medicare] fraction' for hospital cost reporting periods beginning in federal fiscal year 2007." *See* Def.'s Mot. Dismiss, Ex. A ("*Allina I* Compl.") ¶ 2, ECF No. 9-3. In their request for relief, the Hospitals sought an order "declaring invalid the Secretary's determination to include Medicare Advantage days in the [SSI/Medicare] fraction of the Medicare DSH calculation" and "directing the Secretary to recalculate all of the plaintiff

---

[5] The parties refer to both the decision of the district court and the decision of the D.C. Circuit on direct appeal as *Allina I*. To avoid confusion, the Court will follow the same practice. *Allina II* refers to litigation where some of the same hospitals challenged the calculation of the SSI/Medicare and Medicaid Fractions for later years. In that case, the D.C. Circuit recently held that HHS violated the Medicare Act when it failed to provide for notice and comment before it included Part C days in the SSI/Medicare fractions for 2012. *See Allina Health Servs. v. Price* (*Allina II*), No. 16-5255, 2017 WL3137996 at *6 (D.C. Cir. July 25, 2017). The parties refer to the present action as *Allina III*. *See, e.g.*, Def.'s Mem. at 2; Pls.' Opp'n at 19.

[6] The Secretary has provided excerpts of the joint appendix created for the *Allina I* appeal as Exhibit B to his motion to dismiss. *See* Def.'s Mem. at 8 n.4; *see also generally* Def.'s Mot. Dismiss, Ex. B, ECF No. 9-4. Many pages of these excerpts are marked with multiple, inconsistent page numbers. To avoid confusion, the Court will cite the page numbers automatically generated by the Court's Electronic Case Filing system.

hospitals' [SSI/Medicare] fractions for federal fiscal year 2007 to exclude Medicare Advantage days." *Allina I* Compl. ¶ 72.

Before this Court reached the merits of *Allina I*, the D.C. Circuit issued a decision in *Northeast Hospital Corp. v. Sebelius*, 657 F.3d 1 (D.C. Cir. 2011). *Northeast Hospital* involved a different set of plaintiff hospitals, but presented issues related to *Allina I*. Initially, another judge of this Court decided that the decision to include Medicare Part C days in the SSI/Medicare fraction for fiscal years 1999–2002 failed under *Chevron* steps one and two. *See Ne. Hosp. Corp. v. Sebelius*, 699 F. Supp. 2d 81, 92–95 (D.D.C. 2010). On appeal, the D.C. Circuit instead rejected the challenger's argument under *Chevron* step one. *See Ne. Hosp. Corp.*, 657 F.3d at 13 ("Congress has not clearly foreclosed the Secretary's interpretation that M+C enrollees are entitled to benefits under Part A. Rather, it has left a statutory gap, and it is for the Secretary, not the court, to fill that gap."). But the D.C. Circuit did not reach *Chevron* step two, "because even if the Secretary's present interpretation is reasonable, it cannot be applied retroactively to fiscal years 1999–2002." *Id.*

Following the D.C. Circuit's *Northeast Hospital* decision, this Court ruled in favor of the *Allina I* plaintiffs. The Court concluded that "the Secretary's interpretation of the fractions in the DSH calculation . . . was not a 'logical outgrowth' of the 2003 NPRM" and that "the Secretary's cursory explanation in the 2004 Final Rule failed to meet the requirements of the [Administrative Procedure Act]." *See Allina I*, 904 F. Supp. 2d at 89, 93. As a remedy, the Court vacated the 2004 Final Rule. *Id.* at 95.

The Secretary appealed to the D.C. Circuit, and the Circuit agreed that vacatur was the appropriate remedy. *See Allina I*, 746 F.3d at 1111. But the Circuit did not affirm in full. Instead, the Circuit explained that this Court "ordered the Secretary to recalculate the hospitals'

reimbursements 'without using the interpretation set forth in the 2004 Final Rule.'" *Id.* The

Circuit held that "the [district] court erred by directing the Secretary how to calculate the

hospitals' reimbursements, rather than just remanding after identifying the error." *Id.* Instead,

the Circuit noted, it remained an open question "whether the Secretary could reach the same

result through adjudication." *Id.*

Elsewhere in the decision, the Circuit clarified the impact of its *Northeast Hospital*

decision. The Circuit explained that, in *Northeast Hospital*:

> [W]e explicitly stated that the Secretary did have a prior practice of excluding
> Part C days from the Medicare fraction. Granted, we did not say the Secretary
> counted the Part C days in the Medicaid fraction, but *the statute unambiguously
> requires that Part C days be counted in one fraction or the other* (a Part C-
> enrolled individual is either eligible for Medicare Part A, or not), so the necessary
> implication of our opinion is obvious.

*Id.* at 1108 (citation omitted) (emphasis added).

### C. The Present Action

Following the D.C. Circuit's decision in *Allina I*, this Court remanded the matter to HHS.

*See Allina I*, No. 10-1463 (D.D.C. May 18, 2015) (order remanding to HHS), ECF No. 66. The

Administrator of CMS then issued a remand notice that stated that the matter was "now before

the Administrator of CMS for a determination of the appropriate statutory interpretation in the

absence of the vacated 2004 rule to be used to calculate the [p]roviders' DSH payment with

respect to the treatment of the Part C days for FY 2007." Letter from Jacqueline R. Vaughn,

Attorney Advisor to the CMS Administrator at 2 (Dec. 5, 2014) ("Remand Notice"), ECF No.

12-2. In response, the Hospitals submitted comments that addressed both the SSI/Medicare

Fraction and the Medicaid Fraction. *See Allina Health Servs.*, Nos. 10-1463, 12-0328, at 4 (Ctrs.

for Medicare & Medicaid Servs. Dec. 1, 2015) ("Adm'r Dec."), ECF No. 9-7. The

Administrator issued a decision that stated that the "case was remanded to the Secretary to

determine whether patient days for Part C patients should be counted in the Medicare fraction of the Disproportionate Patient Percentage for the hospitals at issue in FY 2007 or the numerator of the Medicaid fraction." Adm'r Dec. at 3. The Administrator rejected the Hospitals' positions and concluded that Part C days should be treated the same as other Part A days. *See* Adm'r Dec. at 41, 45. In other words, "[a] patient enrolled in a [Part C] plan remains entitled to benefits under Medicare Part A and should be counted in the [SSI/Medicare] fraction of the disproportionate patient percentage and not the Medicaid fraction." Adm'r Dec. at 41.

On January 29, 2016, the Hospitals brought suit in this Court. *See* Compl., ECF No. 1. The Hospitals challenge the Administrator's decision below, arguing that it "is both procedurally and substantively invalid." Compl. ¶ 3. Among their procedural objections, the Hospitals argue that the Administrator's decision is invalid because it seeks to depart from binding regulation through adjudication and because it retroactively "changes a substantive legal standard governing . . . the payment for services" without undertaking the proper notice and comment rulemaking procedure. *See* Compl. ¶¶ 35–40. The Hospitals also argue that the decision below is substantively invalid for a number of reasons. *See* Compl. ¶¶ 41–46.

The Secretary moves to dismiss the Hospitals' Complaint. *See generally* Def.'s Mot. Dismiss, ECF No. 9. Although the Secretary argues that he should prevail on the merits of the Hospitals' claims, the motion to dismiss instead addresses a threshold question. *See* Def.'s Mem. at 2, ECF No. 9-1. In short, the Secretary argues that the Hospitals' claims in *Allina I* only addressed the SSI/Medicare Fraction, not the Medicaid Fraction. *See* Def.'s Mem. at 2. The Secretary argues that, because this case is a "post-remand continuation" of *Allina I*, the Hospitals cannot now seek review of the calculation of Medicaid fraction for the 2007 cost year. *See* Def.'s Mem. at 2. The Hospitals oppose the Secretary's motion, *see generally* Pls.' Opp'n, and

the Secretary filed a reply brief, *see* Def.'s Reply Mem. P. & A. Supp. Mot. Dismiss ("Def.'s Reply"), ECF No. 13.[7]

### III. LEGAL STANDARD

The Secretary has not addressed in any detail which legal standard applies to his motion to dismiss. The Secretary briefly states in his motion "that the Court lacks subject matter jurisdiction over" the Hospitals' challenge and "that plaintiffs are judicially estopped." Def.'s Mot. Dismiss at 1. The Secretary also states that the motion is brought pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction. *See* Def.'s Mot. Dismiss at 1. In their opposition, the Hospitals argue that the Secretary's arguments are not actually jurisdictional, but instead implicate "discretionary doctrines, such as waiver and judicial estoppel." Pls.' Opp'n at 9 & n.4. The Secretary does not address this issue in his reply brief. *See generally* Def.'s Reply.

Rule 12(b)(1) addresses subject matter jurisdiction. Federal courts are courts of limited jurisdiction, and the law presumes that "a cause lies outside this limited jurisdiction." *Rasul v. Bush*, 542 U.S. 466, 489 (2004) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)); *see also Gen. Motors Corp. v. EPA*, 363 F.3d 442, 448 (D.C. Cir. 2004) ("As a court of limited jurisdiction, we begin, and end, with an examination of our jurisdiction."). Thus, it is the plaintiff's burden to establish that the Court has subject matter jurisdiction. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). When considering whether it has jurisdiction, a court must accept "the allegations of the complaint as true." *Banneker Ventures, LLC v. Graham*, 798

---

[7] Following the conclusion of briefing on the Secretary's motion, this case was randomly reassigned to the undersigned judge. *See* Reassignment of Civil Case (Aug. 26, 2016), ECF No. 14.

F.3d 1119, 1129 (D.C. Cir. 2015).  Where necessary to resolve a jurisdictional challenge, "the court may consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Id.* (quoting *Herbert v. Nat'l Acad. of Sciences*, 974 F.2d 192, 197 (D.C. Cir. 1992)).

Rule 12(b)(6) addresses whether a party has stated a cognizable claim for relief.  To survive such a motion, a complaint must contain sufficient factual allegations that, if accepted as true, would state a plausible claim to relief.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*  Instead, plaintiffs must "nudge[ ] their claims across the line from conceivable to plausible."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "In evaluating a Rule 12(b)(6) motion to dismiss, a court may consider the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, or documents upon which the plaintiff's complaint necessarily relies even if the document is produced not by the parties."  *Busby v. Capital One, N.A.*, 932 F.Supp.2d 114, 133–34 (D.D.C. 2013) (internal citations and quotations omitted).

The parties present limited argument explaining why the application of one standard of review, rather than another, would affect the resolution of the pending motion.  Where necessary, the Court will consider whether the Secretary's arguments are jurisdictional in nature.

## IV.  ANALYSIS

The Secretary's motion is based on a single idea—that the Hospitals' first challenge in *Allina I* sought review only of the *SSI/Medicare fraction* and that the Hospitals therefore cannot seek review of the *Medicaid fraction* now.  The Secretary makes two arguments in support of this contention.  The Secretary styles the first argument as a jurisdictional challenge.  *See* Def.'s

Mem. at 12–15. Relying on a handful of cases from this jurisdiction, the Secretary argues that the Hospitals "did not seek administrative or judicial review of the calculation of their Medicaid fractions in the *Allina I* case," and that this Court lacks jurisdiction over any "additional challenge" raised following remand. *See* Def.'s Mem. at 12. The Secretary's second argument is that the Hospitals are judicially estopped from challenging the Medicaid fraction because of the positions they took in *Allina I*. *See* Def.'s Mem. at 15–21. The Secretary contends that the Hospitals limited their initial challenge to the SSI/Medicare fraction because they had a stronger argument in the context of that fraction and "it would be unfair to allow them to retain that advantage while taking the opposite position now." *See* Def.'s Mem. at 15.

The Hospitals dispute both arguments and raise additional issues that they believe support this Court's review of their claims arising from the Medicaid fraction. First, the Hospitals argue that the Secretary's arguments are not truly jurisdictional. *See* Pls.' Opp'n at 8–10. Instead, the Hospitals contend that the Secretary is relying on the discretionary doctrines of waiver and judicial estoppel, and that, in fact, the relevant statutes give this Court jurisdiction to conduct a plenary review of the agency's final decision. *See* Pls.' Opp'n at 8–10. Second, the Hospitals argue that, under clear D.C. Circuit precedent, relief with respect to one of the fractions necessarily affects both fractions. *See* Pls.' Opp'n at 10–13. In short, the Hospitals contend that "the statute commands that if part C days are excluded from the [SSI/Medicare] fraction, then they must be included in the Medicaid fraction, and vice versa." Pls.' Opp'n at 10. Third, the Hospitals argue that they did, in fact, challenge both fractions in *Allina I*. *See* Pls.' Opp'n at 13–19. Finally, the Hospitals address the Secretary's two arguments head on. *See* Pls.' Opp'n at 19–26. Even if the Hospitals had limited their claims in *Allina I* to the SSI/Medicare fraction—

which the Hospitals dispute—they contend that there is no basis for either waiver or judicial estoppel. *See* Pls.' Opp'n at 20–26.

The Court will first consider the arguments raised by the Secretary in his motion to dismiss. Because the Court is not convinced by either argument, the motion to dismiss will be denied for the reasons set forth below.

## A. The Secretary's Jurisdictional Argument

The Court first turns to the Secretary's argument that this Court lacks jurisdiction to entertain the Hospitals' claims related to the Medicaid fraction because the Hospitals purportedly did not raise these claims in *Allina I*. *See* Def.'s Mem. at 12–15. Briefly stated, the Secretary contends that the Hospitals "did not seek administrative or judicial review of the calculation of their Medicaid fractions in the *Allina I* case" and, therefore, the Hospitals "cannot add that additional challenge to the scope of the case by seeking review from the proceedings on remand in that case." *See* Def.'s Mem. at 12.

The Secretary relies on three cases to support his argument. First, the Secretary cites *Northwestern Indiana Telephone Co. v. FCC*, 872 F.2d 465, 470 (D.C. Cir. 1989) for the general principle that, following remand, a party cannot raise an argument that it failed to raise in the initial proceeding. *See* Def.'s Mem. at 12. To be sure, *Northwestern Indiana Telephone* does stand for that general principle. But the Secretary's reading of the case is both overbroad and misplaced.

Crucially, the Secretary contends that this argument implicates this Court's subject matter jurisdiction. *See* Def.'s Mot. at 1 ("[T]he Court lacks subject matter jurisdiction over such a challenge."); Def.'s Mem. at 12 (arguing that the Court "had no jurisdiction in *Allina I* to consider" a challenge to the Medicaid fraction), at 15 ("[T]he only provision directly at stake in a

jurisdictional or remedial sense is the one challenged, the [SSI/Medicare] fraction calculation."). But the concept described in *Northwestern Indiana Telephone* is not jurisdictional. In fact, the opinion never uses the term "jurisdiction." *See generally Nw. Indiana Tel. Co.*, 872 F.2d 465. More recent cases relying on *Northwestern Indiana Telephone* make clear that "the 'waiver principle is [not] an absolute preclusion to appellate review.'" *United States v. Henry*, 472 F.3d 910, 913 (D.C. Cir. 2007) (alteration in original) (quoting *Crocker v. Piedmont Aviation, Inc.*, 49 F.3d 735, 739 (D.C. Cir. 1995)). Although the "discretion to waive a waiver is normally exercised only in exceptional circumstances," *id.* (quoting *Crocker*, 49 F.3d at 740), the doctrine does not undermine a court's *jurisdiction* to consider the issue.

Furthermore, the principle set forth in *Northwestern Indiana Telephone* is not absolute. For instance, the D.C. Circuit held in *Alpharma, Inc. v. Leavitt* that a party could raise an argument for the first time on a second appeal following remand to the FDA. 460 F.3d 1, 9 (D.C. Cir. 2006). In *Alpharma*, the Circuit remanded to the FDA and the agency responded "in the form of a[] . . . letter" from the FDA's Associate Commissioner for Regulatory Affairs "that reaffirmed [the FDA's] original decision to deny Alpharma's citizen petitions and to approve" the animal drug application in question. *Id.* at 5. The Court rejected the FDA's position that Alpharma's new arguments were "not properly before [the Court] because the company did not raise them on the first appeal." *Id.* at 9. Instead, the Court explained that "the arguments that Alpharma asserts here all involve statements that the FDA made for the first time after that appeal," and, therefore, the rule of *Northwestern Indiana Telephone* was not applicable. *Id.*

A Second Circuit case interpreting *Northwestern Indiana Telephone* is also instructive. In that case, the Second Circuit considered an appeal following an initial appeal to the D.C. Circuit and remand to the FAA. *See Se. Queens Concerned Neighbors, Inc. v. FAA*, 229 F.3d

387, 392 (2d Cir. 2000). The Second Circuit acknowledged *Northwestern Indiana Telephone* and the general waiver rule, but noted that "the facts of that case differ from the case before us." *Id.* at 391. The court noted that the petitioners before it had not participated in the prior appeal, but explained that "[m]ore important for our purposes are the differences in the scope and nature of the remand issued in each case." *Id.* at 391–92. The court relied on the fact that the FAA considered new information and that "the D.C. Circuit deferred entirely any consideration of the substantive arguments now at issue." *Id.* at 392.

The Court finds that this case is closer to *Alpharma* and *Southeast Queens* than *Northwestern Indiana Telephone.* Here, the D.C. Circuit explicitly held in *Allina I* that "the [district] court erred by directing the Secretary how to calculate the hospitals' reimbursements, rather than just remanding after identifying the error." *See Allina I*, 746 F.3d at 1111. The Court refrained from addressing the question of "whether the Secretary could reach the same result through adjudication." *Id.* Now, following remand to the agency, that precise issue is before this Court. The Hospitals could not have challenged that adjudication, whether it applied to one fraction or both, before it took place, and it would be inappropriate for the waiver doctrine to prevent them from challenging it now. Furthermore, the D.C. Circuit's *Allina I* decision clarified an important point of law. The decision, acknowledging prior confusion, explained:

> Granted, we did not say the Secretary counted the Part C days in the Medicaid fraction, but *the statute unambiguously requires that Part C days be counted in one fraction or the other* (a Part C-enrolled individual is either eligible for Medicare Part A, or not), so the necessary implication of our opinion is obvious.

*Id.* at 1108 (emphasis added). That clarification has important implications for this case, which the Hospitals could not have relied on in the initial *Allina I* litigation.

Furthermore, this interpretation is consistent with the purposes of the waiver doctrine. The waiver doctrine seeks to protect "procedural efficiency" and to "prevent[] the 'bizarre result'

that 'a party who has chosen not to argue a point on a first appeal should stand better as regards the law of the case than one who had argued and lost.'" *See Nw. Indiana Tel. Co.*, 872 F.2d at 470 (quoting *Laffey v. Northwest Airlines*, 740 F.2d 1071, 1089–90 (D.C. Cir. 1984)). Here, there is no harm to procedural efficiency because the D.C. Circuit in *Allina I* understood that interpreting the application of Part C days in connection with either the Medicaid fraction or the SSI/Medicare fraction would necessarily compel the result with regard to the other fraction. *See Allina I*, 746 F.3d at 1108. Nor is there any danger that the Hospitals might be better off than a hypothetical party that raised claims related to both fractions in the initial proceeding because the Hospitals won vacatur of the entire 2004 Final Rule that they challenged.

The Secretary also relies on *Baystate Medical Center v. Leavitt*, 545 F. Supp. 2d 20, 57 (D.D.C. 2008), *amended in part*, 587 F. Supp. 2d 37 (D.D.C. 2008), to support his argument that this Court lacks jurisdiction over the Hospitals' Medicaid fraction claims. *See* Def.'s Mem. at 12–13. The relevant portion of *Baystate* states:

> [T]he Court finds no basis in section 1395oo to resolve the issue of who is "entitled to benefits under part A" under section 1395ww(d)(5)(F)(vi) because Baystate's appeal is limited to the [SSI/Medicare] fraction, and Baystate acknowledges that resolution of this issue is not expected to affect the [SSI/Medicare] fraction. This approach is consistent with the general principle, developed in administrative law cases concerning ripeness and exhaustion, that Article III courts should avoid "unnecessary adjudication" and limit the decision of issues to a "concrete setting." To decide the issue of who is "entitled to benefits under part A" because of its impact on Baystate's Medicaid fraction— which is not at issue in this case—would be to decide the issue wholly out of context, in the absence of an appropriate factual and legal setting. Such an approach would be at odds with Congress's limitation on review of DSH payments in section 1395oo and with sound principles governing administrative law and justiciability.

*Baystate*, 545 F. Supp. 2d at 57 (footnotes and citations omitted).

Even if this Court were bound by decisions of sister courts in this District, this case is distinguishable from *Baystate.* Crucially, the *Baystate* challenge was brought under a different

statutory provision. As the *Baystate* court explained, the relevant "provision states that a provider may obtain Board review of payments computed under section 1395ww(d)—including DSH payments—if the provider 'is dissatisfied with a final determination of the Secretary *as to the amount of the payment*.'" *Id.* at 56 (quoting 42 U.S.C. § 1395oo(a)(1)(A)(ii)) (emphasis in original). In other words, the statute providing for review required the party to allege that any error "had an impact on the 'amount of payment'" and that requirement carried over to review by the district court. *Id.* at 56–57. But the plaintiff had stipulated before the agency that "only the [SSI/Medicare] fraction was being challenged," so it could not allege any impact on payment before the district court. *Id.* at 56 n.40. In this case, the Hospitals did not make any similar stipulation. And more importantly, there is no requirement that the Hospitals allege dissatisfaction as to the amount of payment because their request for judicial review currently before the Court relies on a different statutory provision. *See* 42 U.S.C. § 1395oo(f)(1); *see also* Compl. ¶ 5.[8]

Finally, the Secretary argues that *Catholic Health Initiatives Iowa Corp. v. Sebelius*, 718 F.3d 914 (D.C. Cir. 2013), "is also instructive." Def.'s Mem. at 13. But the Secretary provides no explanation for how this case relates to a court's jurisdiction to hear a claim following remand. *See* Def.'s Mem. at 13–14. The relevant question in that case was how to interpret the phrase "entitled to benefits under Part A" found in the SSI/Medicare and Medicaid fractions.

---

[8] The Secretary appears to argue that the relevant analysis is whether the statutory basis for appeal in *Allina I* required a showing of dissatisfaction. *See* Def.'s Mem. at 15. Although the Court finds that the most appropriate analogy is to the statutory basis for the present request for judicial review, the outcome of this analysis would be the same under either approach. Before *Allina I*, the PRRB specifically found that the Hospitals established dissatisfaction with regard to the SSI/Medicare fraction, *see* Def.'s Mot. Dismiss, Ex. B at 24, and, in the context of any Medicaid claims, there is no dissatisfaction requirement where the intermediary has not yet filed a report, *see* 42 U.S.C. § 1395oo(a)(1)(B).

718 F.3d at 917. Specifically, whether that "language include[s] individuals who meet the statutory criteria for Medicare eligibility, but who have exhausted their coverage." *Id.* The Secretary points to the court's explanation that the Secretary's Medicaid fraction policy was set by an adjudication four years before a rulemaking set the same policy for both fractions. *Id.* at 921 & n.5. But that fact has nothing to do with a court's authority to hear claims challenging the Secretary's action. Furthermore, this case is distinguishable because the D.C. Circuit has held that "the statute unambiguously requires that Part C days be counted in one fraction or the other." *Allina I*, 746 F.3d at 1108.

\* \* \*

For the reasons explained above, the Court is not persuaded by the Secretary's argument that this Court lacks jurisdiction to hear the Hospitals' claims related to the Medicaid fraction. The argument is not jurisdictional, and the Court finds that it would be appropriate to consider the Medicaid fraction claims even if the Hospitals had not raised them in *Allina I*. Thus, the Court denies the Secretary's motion to dismiss to the extent it relies on this argument.

### B. Judicial Estoppel

The Court next considers the Secretary's argument that the Hospitals are judicially estopped from bringing claims related to the Medicaid fraction. *See* Def.'s Mem. at 15–21. In brief, the Secretary argues that the Hospitals' "decision to limit their challenge in *Allina I* to the [SSI/Medicare] fraction calculations conferred a litigation advantage . . . and it would be unfair to allow them to retain that advantage while taking the opposite position now." Def.'s Mem. at 15. For the reasons stated below, the Court is not persuaded by the Secretary's argument.

### 1. Legal Standard

"Judicial estoppel 'prevents a party from asserting a claim in a legal proceeding that is inconsistent with a claim taken by that party in a previous proceeding.'" *Marshall v. Honeywell Tech. Sys. Inc.*, 828 F.3d 923, 928 (D.C. Cir. 2016) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001)). "Because the rule is intended to prevent improper use of judicial machinery, judicial estoppel is an equitable doctrine invoked by a court at its discretion." *New Hampshire*, 532 U.S. at 750 (internal citations and quotation marks omitted). The Supreme Court has enumerated three non-exhaustive factors that inform the Court's decision of whether to invoke the rule: (1) "a party's later position must be clearly inconsistent with its earlier position"; (2) "whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled"; and (3) "whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *Id.* at 750–51 (internal quotation marks omitted). The Court will consider these three factors in turn.

### 2. Clearly Inconsistent

Under the first factor identified by the Supreme Court, "a party's later position must be 'clearly inconsistent' with its earlier position." *Id.* at 750 (internal citations omitted). The Secretary identifies two arguments that he contends are inconsistent. *See* Def.'s Mem. at 16–17. First, the Secretary claims that "in arguing legislative intent, plaintiffs could at least argue about the [SSI/Medicare] fraction that the Secretary's interpretation unfairly 'diluted' hospitals' proportions of low-income patients," while the "congressional-intent argument on the Medicaid fraction is a non-starter." Def.'s Mem. at 16. Second, the Secretary argues that, "as to the [SSI/

Medicare] fraction[,] plaintiffs were able to allege that as a matter of fact the agency's actual *practice* prior to 2003 was consistent with what plaintiffs contended was the correct interpretation of the [SSI/Medicare] fraction." Def.'s Mem. at 16. According to the Secretary, no similar argument was made with respect to the Medicaid fraction. *See* Def.'s Mem. at 16.

These examples illustrate the Secretary's repeated contention that the Hospitals sought to aim the "focus" of the *Allina I* litigation on the SSI/Medicare fraction. *See* Def.'s Mem. at 15. But the Supreme Court's first *New Hampshire* factor does not refer to "focus." Instead, judicial estoppel may be applied where the later position is "clearly inconsistent." *New Hampshire*, 532 U.S. at 750. The Secretary acknowledges that the issues he identifies have relatively stronger and relatively weaker arguments in connection with one fraction or the other. *See* Def.'s Mem. at 15–16 (identifying arguments as "stronger (or less weak)"). But relying on the relatively stronger argument has not created any *clear inconsistency* in the Hospitals' position now.

In other words, it would not be contradictory for the Hospitals to rely on the most compelling arguments related to the SSI/Medicare fraction in the initial proceeding and to now rely on compelling arguments related to both fractions, unless the arguments were somehow *actually contradictory.* Similarly, even if the Hospitals failed to raise Medicaid fraction claims in *Allina I*—which the Hospitals dispute—it would not be contradictory to raise those claims here, unless the Hospitals had taken a position that they could not or would not raise those claims in *Allina I.* In this context, silence is not sufficient to establish a "clearly inconsistent" position. This outcome is consistent with D.C. Circuit guidance that "[d]oubts about inconsistency often should be resolved by assuming there is no disabling inconsistency, so that the second matter may be resolved on the merits." *Comcast Corp. v. FCC*, 600 F.3d 642, 647 (D.C. Cir. 2010)

(quoting 18B Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 4477 (2d ed. 2002)).

Finally, the Secretary also identifies potentially inconsistent arguments related to the financial consequences of litigation related to the DSH calculation. *See* Def.'s Mem. at 20. The Secretary argues that the fact that the Hospitals "were challenging only the [SSI/Medicare] fraction certainly could have contributed to the Court of Appeals' impression that it was that fraction that involved the 'enormous financial consequences.'" *See* Def.'s Mem. at 20. Again, a potential inference based on the Hospitals' litigation strategy does not constitute a "clearly inconsistent" argument.

### 3. Success in Persuading the First Court

The second factor identified by the Supreme Court considers "whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create 'the perception that either the first or the second court was misled.'" *New Hampshire*, 532 U.S. at 750 (quoting *Edwards v. Aetna Life Ins.*, 690 F.2d 595, 599 (6th Cir. 1982)).

Here, the D.C. Circuit never indicated in *Allina I* that it understood its holding to be limited to the SSI/Medicare fraction. Instead, the court repeatedly referred to the binary connection between the two fractions. For example, the court held that "the statute unambiguously requires that Part C days be counted in one fraction or the other (a Part C-enrolled individual is either eligible for Medicare Part A, or not)." *Allina I*, 746 F.3d at 1108. The court also stated that "a party reviewing the Secretary's notice of proposed rulemaking understandably would have assumed that the Secretary was proposing to 'clarify' a then-existing policy, *i.e.*, one of excluding Part C days from the [SSI/Medicare] fraction and including them in

the Medicaid fraction." *Id.* Finally, the court approved of the district court's vactatur of the entire rule, as it applied to both the Medicaid and SSI/Medicare fractions. *Id.* at 1111.

The Secretary's argument related to the possible financial consequences of this and related litigation is more compelling. *See* Def.'s Mem. at 20–21. Different courts have described the effects of changes in the calculation of the two fractions in very different ways. *See, e.g.*, *Allina I*, 746 F.3d at 1107 (linking the "enormous financial consequences" of the case primarily to the "significant[]" effect on the SSI/Medicare fraction); *Baystate*, 545 F. Supp. 2d at 55 (recounting counsel's explanation that "[t]he 'operative effect' of applying the Administrator's definition of Medicare days is not upon the SSI fraction, but instead upon the Medicaid fraction . . ."). The possibility that different courts might be led to different understandings of the financial implications of related litigation is troubling. But crucially, here, the Secretary has not linked any possible misunderstanding to the Hospitals' "clearly inconsistent" arguments.

Finally, the Secretary acknowledges that the *Allina I* court did not accept the Hospitals' congressional intent arguments. *See* Def.'s Mem. at 17.

### 4. Unfair Advantage

As an initial matter, the Secretary argues that any unfair advantage need not be decisive or based on intentional conduct. *See* Def.'s Mem. at 18–19.[9] Accepting the Secretary's position, he must still show that "the party seeking to assert an inconsistent position would derive an

---

[9] In fact, one of the citations in *New Hampshire* suggests that intent may be a relevant factor. *See New Hampshire*, 532 U.S. at 751 (citing and quoting *Scarano v. Central R. Co.*, 203 F.2d 510, 513 (3d Cir. 1953) for the principle that "judicial estoppel forbids use of 'intentional self-contradiction . . . as a means of obtaining unfair advantage'").

unfair advantage or impose an unfair detriment on the opposing party." *New Hampshire*, 532 U.S. at 751.

As previously stated, the Secretary concedes that the congressional intent argument gave the Hospitals no advantage, fair or unfair. *See* Def.'s Mem. at 17. But the Secretary maintains that the Hospitals obtained an unfair advantage "with respect to their argument about the agency's pre-2003 practice in calculating the fraction." Def.'s Mem. at 18. The Secretary contends that, when he previously argued that "the intermediaries' practices in calculating the *Medicaid* fraction had been consistent with the Secretary's position, plaintiffs' response was, in part, that only the [SSI/Medicare] fraction was at issue." Def.'s Mem. at 18. This argument appears to have some weight, but it is undercut by the Secretary's acknowledgment that the D.C. Circuit in *Allina I* "did not directly consider what the intermediaries' practices had in fact been with calculating the Medicaid fraction, but only that the 'necessary implication' of the Court's prior opinion in *Northeast* that the calculation of the [SSI/Medicare] fraction had been in practice inconsistent with the Secretary's position 'was obvious.'" Def.'s Mem. at 18 (quoting *Allina I*, 746 F.3d at 1108. In other words, the D.C. Circuit explained that it was bound by its previous decision, meaning it would be impossible for the Hospitals to gain an unfair advantage through any argument on that point.

\*             \*             \*

In sum, the Secretary has identified a few arguments that potentially meet one of the three *New Hampshire* factors, but none that come close to raising concerns under all three. Judicial estoppel "is an equitable doctrine invoked by a court at its discretion." *New Hampshire*, 532 U.S. at 750 (quoting *Russell v. Rolfs*, 893 F.2d 1033, 1037 (9th Cir. 1990)). After considering the three *New Hampshire* factors and balancing the equities, the Court concludes that there is no

need to exercise its discretion to invoke this equitable doctrine to "prevent 'improper use of judicial machinery.'" *New Hampshire*, 532 U.S. at 750 (quoting *Konstantinidis v. Chen*, 626 F.2d 933, 938 (D.C. Cir. 1980). For these reasons, the Court is not persuaded by the Secretary's argument that the Hospitals are judicially estopped from bringing claims related to the Medicaid fraction. Thus, the Court rejects both arguments raised by the Secretary in his motion to dismiss. The motion is therefore denied.[10]

## V.  CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss (ECF No. 9) is **DENIED**.  An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  August 4, 2017                                         RUDOLPH CONTRERAS
                                                                          United States District Judge

---

[10] Because the Court rejects both of the Secretary's arguments, there is no need to consider the Hospitals' argument that they did, in fact, raise claims related to the Medicaid fraction in *Allina I* or their argument that the binary nature of the Part C policy necessarily affects both fractions. *See* Pls.' Opp'n at 10–19.